IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHELBY TYRONE CLARK, JR., | : | |
|     Plaintiff, | : | |
| | : | |
|     v. | : | Case No. 5:21-cv-4096-JDW |
| | : | |
| LT. BROOKE ALBERT, *et al.*, | : | |
|     Defendants. | : | |

## MEMORANDUM

Shelby Tyrone Clark, Jr., a prisoner at Lehigh County Jail ("LCJ"), filed this *pro se* civil action against Lt. Brook Albert, Director Janine Donate, and Warden Kyle Russell. Mr. Clark also seeks to proceed *in forma pauperis*. For the reasons that follow, the Court will grant Mr. Clark leave to proceed *in forma pauperis*. The Court will dismiss Mr. Clark's Constitutional claims with prejudice and his state law claims without prejudice for lack of subject matter jurisdiction.

## I.  FACTUAL ALLEGATIONS

On December 8, 2020, police officers in Allentown, Pennsylvania, arrested Mr. Clark on charges of simple assault, carrying an unlicensed firearm, and making terroristic threats. Mr. Clark entered a guilty plea on April 19, 2021, to the assault and firearm charges. He was sentenced the same day to a term of incarceration of 6 to 23 months, to be followed by a 12-month term of probation. *Id.* His maximum term of incarceration extends through November 2022.

At some point while at LCJ, Mr. Clark was placed on cellblock 3B. On his first day there, Mr. Clark, who suffers from arthritis, told a correctional officer that he had a pass for the bottom bunk but his cellmate was using the bottom bunk. The CO told Mr. Clark that his cellmate also had a pass for the bottom bunk, but Mr. Clark claims that was incorrect.

Sometime after, Mr. Clark's cellmate attacked him. He called the CO on duty for help. This unnamed CO filed a report stating he "heard a disturbance," which Mr. Clark asserts was him calling for help to break up the fight. (ECF No. 2 at § 5.) The CO did not intervene until getting other inmates locked in their cells. While waiting for intervention, Mr. Clark had to defend himself. He received a misconduct report due to the altercation and received a formal hearing.

Lt. Albert presided over the hearing. At the hearing, Mr. Clark explained what happened during the incident and pled not guilty to the misconduct on the ground of self-defense, but Lt. Albert found him guilty. Mr. Clark received a harsher sentence than his attacker. He appealed, and the appeal was granted in part, although he does not specify what relief he received.

Mr. Clark asserts claims against Lt. Albert, Director Donate, and Warden Russel. He seeks an unstated amount of money damages for "discriminatory intent or purpose, malice and intent, cruel and unusual punishment, failure to protect inmate, violation of medical/HIPPA law, intentional infliction of emotional distress, violation of equal protection, indemnification, for official oppression." (*Id*. at § VI.)

## II. STANDARD OF REVIEW

A plaintiff seeking leave to proceed *in forma pauperis* must establish that he is unable to pay for the costs of his suit. *See Walker v. People Express Airlines, Inc.*, 886 F.2d 598, 601 (3d Cir. 1989). Where, as here, a court grants a plaintiff leave to proceed *in forma pauperis*, the Court must determine whether the complaint states a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii). That inquiry requires the court to apply the standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Under that standard, the court must take all well-pleaded allegations as true, interpret them in the light most favorable to the plaintiff, and draw all inferences in his favor. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016). Moreover, because Mr. Clark is proceeding *pro se*, the Court must construe his pleadings liberally. *See Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III. DISCUSSION

### A. Leave To Proceed *In Forma Pauperis*

Mr. Clark has completed the form provided on the Court's website for applications to proceed *in forma pauperis* and has attested under penalty of perjury that he cannot afford to pay the filing fees. (ECF No. 1.)  Moreover, his application to proceed *in forma pauperis* demonstrates that he lacks the income or assets to pay the required filing fees. Therefore, the Court will grant him leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act,

Mr. Clark will nonetheless have to pay the full filing fee in installments. *See* 28 U.S.C. § 1915(b).

### B.     Plausibility Of Claims In The Complaint

Mr. Clark filed his complaint on the Court's claim for prisoners asserting civil rights claims. Construed liberally, the Complaint appears to assert claims under both federal and state law. The Court will address both.

#### 1.     Constitutional claims

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).  Because Mr. Clark does not specify the date when the events at issue occurred, the Court will consider them under both the standard that applies to convicted prisoners and under the standard for pretrial detainees.

##### a.     Due process claims against Lt. Albert

"Generally, prisons may sanction a pretrial detainee for misconduct that he commits while awaiting trial, as long as it is not a punishment for the 'underlying crime of which he stands accused.'"  *Kanu v. Lindsey*, 739 F. App'x 111, 116 (3d Cir. 2018) (quoting *Rapier v. Harris*, 172 F.3d 999, 1003-06 (7th Cir. 1999)).  However, while "'pretrial detainees do not have a liberty interest in being confined in the general prison population, they do have a liberty interest in not being detained indefinitely in [disciplinary segregation] without

4

explanation or review of their confinement.'" *Singleton v. Superintendent Camp Hill SCI*, 747 F. App'x 89, 92 (3d Cir. 2018) (*per curiam*) (quoting *Bistrian v. Levi*, 696 F.3d 352, 375 (3d Cir. 2012)). With respect to pretrial detainees, "the imposition of disciplinary segregation for violation of prison rules and regulations cannot be imposed without providing the due process protections set forth in *Wolff v. McDonnell*, 418 U.S. 539 . . . (1974)." *Kanu*, 739 F. App'x at 116. Such protections "include the right to receive written notice of the charges at least 24 hours before the hearing, the opportunity to present witnesses and documentary evidence, and a written statement of the reasons for the disciplinary action taken and the supporting evidence." *Id.* (citing *Wolff*, 418 U.S. at 563-66); *see also Stevenson v. Carroll,* 495 F.3d 62, 70 (3d Cir. 2007).

The standard applicable to convicted prisoners is less stringent. For a prisoner, a constitutional deprivation involving disciplinary proceedings occurs when the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The standard is less stringent for a convicted prisoner because "[d]iscipline by prison officials in response to a wide range of misconduct" is to be expected as part of an inmate's sentence. *See id*. at 485. Thus, "[w]hen considering whether an inmate's placement in segregated housing triggers a legally cognizable interest courts should consider: (1) the amount of time spent in segregation; and (2) whether the conditions of segregation were significantly more restrictive than those imposed on other inmates in segregation." *Allah v.*

*Bartkowski*, 574 F. App'x 135, 139 (3d Cir. 2014). Moreover, "a thorough investigation is not a requirement of due process in the prison disciplinary setting." *See Parks v. O'Shaughnessy*, Civ. A. No. 14-1268, 2016 WL 4385869, at *4 (M.D. Pa. May 3, 2016); *see also Moles v. Holt*, 221 F. App'x 92, 96 (3d Cir. 2007). Thus, absent a protected liberty interest, a convicted prisoner cannot maintain claims regarding alleged procedural defects prior to and during his misconduct proceedings.

Mr. Clark's allegations fail to state a plausible claim against Lt. Albert based on Lt. Albert's adjudication of Mr. Clark's disciplinary charge even when analyzed under the more stringent standard applicable to pretrial detainees. While Mr. Clark appears to disagree with the result, it is clear that he received notice of the charges in the form of a misconduct report, had the opportunity to present his side of the story, and received a written statement containing Lt. Albert's decision, which he then successfully appealed in part. These steps satisfy the obligations of due process, so any due process claim asserted against Lt. Albert is not plausible. Because Mr. Clark cannot amend his way around these facts, the Court will dismiss his claim against Lt. Albert with prejudice. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002).

### b. Equal protection claims against Lt. Albert

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated

should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). To establish an equal protection violation, a prisoner must allege "that he was treated differently than other similarly situated inmates, and that this different treatment was the result of intentional discrimination based on his membership in a protected class." *Mack v. Warden Loretto FCI*, 839 F.3d 286 (3d Cir. 2016) (citing *Hassan v. City of New York*, 804 F.3d 277, 294, 298 (3d Cir. 2015)). "Persons are 'similarly situated' for purposes of an equal protection claim when 'they are alike in all relevant aspects.'" *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008) (emphasis omitted). Additionally, to state a race-based equal protection claim, a plaintiff must allege that defendants were motivated by racial animus. *W.B. v. Matula*, 67 F.3d 484, 503 (3d Cir. 1995) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *Pratt v. Thornburgh*, 807 F.2d 355, 357 (3d Cir. 1986)).

Mr. Clark claims that the sentence he received for his misconduct was greater than that imposed on his attacker, and he uses the words "equal protection." But he does not offer any details about the sentences that he and his attacker received, nor does he make any allegations about the reasons for that disparity. Those conclusory allegations do not state a claim for violation of the Equal Protection Clause. *See Iqbal*, 556 U.S. at 678. The Court cannot say whether Mr. Clark could make such an allegation. The Court will give him leave to file an amended complaint, if he has a good faith basis to make the required allegations.

### c. Claims against Director Donate and Warden Russel

"A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Other than list the names of Director Donate and Warden Russell, Mr. Clark makes no allegation about their involvement in the incidents at issue, if at all. His claim against them is therefore not plausible.

To the extent Mr. Clark seeks to hold Director Donate and Warden Russell liable as supervisors, the claim also is implausible. There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.* Because Mr. Clark fails to allege that Director Donate or Warden Russell maintained a policy that caused a constitutional violation or personally directed a subordinate to violate Clark's rights, the claims against Donate and Russell are dismissed pursuant to 28 U.S.C.

8

§ 1915(e)(2)(B). Further, because Mr. Clark's allegations establish that he received the process that was due to him, any amendment of his due process claim would be futile, sot the Court will dismiss those claims against Director Donate and Warden Russell with prejudice. However, the Court will dismiss any equal protection claims without prejudice and give Mr. Clark an opportunity to amend his complaint to address the equal protection claims, if he has a basis to do so.

### 2. State law claims

The Court could only hear Mr. Clark's state law claims by exercising supplemental jurisdiction over them under 28 U.S.C. § 1367(c). It is unclear at this stage whether Mr. Clark can state a viable federal claim. The Court will therefore hold Mr. Clark's state law claims in abeyance pending review of any amended complaint.

## IV. CONCLUSION

The Court will dismiss Mr. Clark's due process claims with prejudice and his equal protection claims without prejudice. If Mr. Clark has a basis to allege an equal protection claim, he will have an opportunity to do so. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua Wolson*
**JOSHUA D. WOLSON, J.**

October 20, 2021