IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHELBY TYRONE CLARK, JR., | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 21-CV-4096 |
| | : | |
| LT. BROOKE ALBERT, *et al.*, | : | |
| Defendants. | : | |

## MEMORANDUM

In his Amended Complaint ("AC"), Shelby Tyrone Clark, a pretrial detainee at the Lehigh County Jail ("LCJ), alleges that several employees at LCJ violated his constitutional and statutory rights. His claims all arise out of his alleged entitlement to the lower bunk in his cell, an altercation about that bunk, and disciplinary proceedings that followed. He has sued Lt. Brooke Albert, an unnamed Correctional Officer ("John Doe"), Correctional Officer Tyler, Deputy Warden Robert McFadden, Deputy Warden Steven Miller, Treatment Supervisor Douglas Mette, Director Janine Donate, and Warden Kyle Russel. For the reasons that follow, the Court concludes that most of Mr. Clark's claims are implausible, and the Court will dismiss them. One claim against Officer Tyler is sufficient, and the Court will permit it to proceed.

**I.    FACTUAL ALLEGATIONS**

   **A.    Mr. Clark's Bunk Assignment**

In mid-March 2021, Mr. Clark moved from cellblock 1A to cellblock 3B. On his first day in 3B, Mr. Clark, who suffers from arthritis, told Officer Tyler that he had a pass for the bottom bunk, but his cellmate was using the bottom bunk. Officer Tyler

told Mr. Clark that his cellmate also had a pass for the bottom bunk, and Mr. Clark would have to use the top bunk for the next month until the cellmate was due to be discharged. According to Mr. Clark, Officer Tyler "should have known to tell my celly [to move to the top bunk] as a precaution to avoid issues between my celly and I and out of fear that I may sustain injury from my arthritis." (ECF No. 9 at 15.) He alleges that Officer Tyler knew of his "inability to grieve" over his cell assignment and "should have known of [his] physical disability" and that his new cellmate was "accused of possession with intent." (*Id.* at 14.)

### B. The Altercation And Resulting Discipline

In late March 2021, Mr. Clark had a physical altercation with his cellmate. An unknown Correctional Officer, who the Court will call "John Doe," responded when the altercation occurred. Officer Doe knew that Mr. Clark was having issues with his cellmate over the bunk assignment, language barriers, and "knowing how to jail." (*Id.* at 15.) Officer Doe delayed intervening to stop the incident until he first placed all other inmates on the block back into their own cells. Given that delay, Mr. Clark had to defend himself from his cellmate's attack. The delay also gave Mr. Clark's cellmate more time to injure Mr. Clark. Mr. Clark suffered a blunt force concussion, broken capillaries in his nasal cavity, and a laceration to the inside of his cheek during the altercation. He alleges he received no medical treatment and was told "you're tough, you'll be okay." (*Id.* at 5.) He does not, however, identify who told him this or identify any medical provider who denied him treatment for these injuries.

Officer Doe "took advantage while reporting the incident[] by lying on the report, which led to [Mr. Clark's] detention." (*Id.* at 14.) Lt. Albert conducted a

disciplinary hearing following the altercation. Mr. Clark offered his version of events and asserts that Lt. Albert "should have known that [Mr. Clark] was only defending [himself] and [his] celly attacked" because a correctional officer and a sergeant pulled his cellmate off of him and he pushed his cellmate away. (*Id.* at 15–16.) Nonetheless, Lt. Albert found Mr. Clark guilty of misconduct and imposed a longer disciplinary sentence on Mr. Clark than on Mr. Clark's cellmate. Mr. Clark asserts that the disparate sentences came because he is Black and his cellmate is Hispanic.

Mr. Clark appealed Lt. Albert's decision. Deputy Wardens Miller and McFadden reduced his sentence by five days, but they also reduced his cellmate's sentence by the same amount. This permitted the cellmate to return to cellblock 3B, but Mr. Clark had to move to cellblock 3C2. Mr. Clark asserts that that move "impaired [his] formal arraignment and sentencing by using [his] misconduct as an obstacle." (*Id.* at 14.) Mr. Clark asserts that Mr. Mette and Deputy Warden Miller "denied [him] the privilege of being intentionally classified as a person of inferiority" and had knowledge of the substantial risk he faced from his cellmate. (*Id.* at 14.)

Warden Russel and Director Donate also knew that the physical altercation caused a substantial risk to Mr. Clark's safety and wellbeing, and Mr. Clark appears to assert they are responsible for the training of all staff at LCJ, including how they should respond to that type of incident and how staff should adjudicate misconduct charges. According to Mr. Clark, Director Donate and Warden Russel are aware that inmates cannot file grievances over cell assignments, "which is an obstacle that causes significant risk to potential injury to an inmate such as myself." (*Id.* at 14.) He

alleges this "perverts the administration from governmental function, . . . allows mistreatment, and denies [the privilege] of being kept safe." (*Id*.)

### C.  Procedural History

Mr. Clark filed suit on September 13, 2021. On October 20, 2021, the Court granted Mr. Clark leave to proceed *in forma pauperis*. The Court also dismissed Mr. Clark's due process claims with prejudice and his equal protection claims without prejudice. The Court reserved judgment on the state law claims because it was unclear whether Mr. Clark had asserted a viable federal claim.

On November 1, 2021, Mr. Clark submitted an Amended Complaint. In it, he asserts claims under 42 U.S.C. § 1983 for violation of his equal protection rights, a violation of the "HIPPA Law," "official oppression," "speculating or wagering on official action or information," "obstructing administration of law or other governmental function," and "aiding consummation of a crime." (*Id*. at 3.) Mr. Clark names Officer Tyler, Officer Doe, and Lt. Albert in their individual and official capacities, but he names Deputy Wardens McFadden and Miller, Mr. Mette, Director Donate, and Warden Russel in their official capacities only. Nonetheless, in an abundance of caution, the Court will construe the complaint as asserting claims against each of these defendants in his official and individual capacity. He seeks $300,000 in money damages and the ability to file grievances about cell assignments and the lack of staff training.

## II.  STANDARD OF REVIEW

Because the Court granted Mr. Clark leave to proceed *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) applies and requires the Court to dismiss the AC if it fails to

state a claim. To make that determination, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. Because Mr. Clark is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021).

### III. DISCUSSION

#### A. Individual Capacity Claims

##### 1. HIPAA

Mr. Clark references HIPAA in his AC, which the Court takes as a reference to the Health Insurance Portability and Accountability Act. That statute deals with the security and privacy of medical records. Mr. Clark's AC does not touch on that subject, so the Court will dismiss all HIPAA claims.

##### 2. Lt. Albert

The Court has already dismissed Mr. Clark's due process claims against Lt. Albert with prejudice. That leaves his equal protection claims. "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). To establish an equal protection violation, a prisoner must allege "that he was treated differently than other similarly situated inmates, and that this different treatment was the result of intentional discrimination based on his membership in a

protected class." *Mack v. Warden Loretto FCI*, 839 F.3d 286, 305 (3d Cir. 2016) (citing *Hassan v. City of New York*, 804 F.3d 277, 294, 298 (3d Cir. 2015)). "Persons are similarly situated under the Equal Protection Clause when 'they are alike in all relevant aspects.'" *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008) (citation omitted). Additionally, to state a race-based equal protection claim, a plaintiff must allege that defendants were motivated by racial animus. *W.B. v. Matula*, 67 F.3d 484, 503 (3d Cir. 1995) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *Pratt v. Thornburgh*, 807 F.2d 355, 357 (3d Cir. 1986)).

Mr. Clark has not stated a claim for an equal protection violation because his pleadings establish that he and his cellmate were not similarly situated. In particular, Mr. Clark notes that Lt. Albert concluded that Mr. Clark was the aggressor during the altercation with his cellmate, and Lt. Albert rejected Mr. Clark's testimony that he was defending himself. (ECF No. 9 at 15–16.) Because an attacker and a victim are not similarly situated, Lt. Albert did not violate the equal protection clause by giving Mr. Clark and his cellmate disparate sentences. Mr. Clark does mention race in his allegations about the disparate sentences, but that is not enough to state a plausible equal protection claim when the two individuals were not similarly situated.

### 3. Officer Tyler

"'Courts have found that it can be an Eighth Amendment violation where an inmate has a serious medical need requiring him to use the bottom bunk, but prison officials are deliberately indifferent to that need.'" *Saunders v. GEO Grp., Inc.*, Civ. A. No. 19-2322, 2019 WL 5558659, at *4 (E.D. Pa. Oct. 25, 2019) (quoting *Whitehead v. Wetzel*, Civ. A. No. 14-51, 2016 WL 356809, at *7 (W.D. Pa. June 2, 2016)). Mr. Clark

6

asserts that Officer Taylor knew that Mr. Clark had a bottom bunk pass but nonetheless told him he was required to use the top bunk for a period of time until his cellmate was released. Read liberally, that allegation asserts a plausible claim against Officer Taylor for violating Mr. Clark's rights. The Court will therefore permit this claim to proceed.

### 4. Officer Doe

The Due Process Clause of the Fourteenth Amendment protects pretrial detainees from punishment. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979). A detainee must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 297–99 (1991); *see also Wilson v. Burks*, 423 F. App'x 169, 173 (3d Cir. 2011) (*per curiam*). The Court understands Mr. Clark to be asserting two separate claims against Officer Doe: a due process claim based on his delay in breaking up the altercation; and a due process claim for making a false incident report. As to the first part, Mr. Clark does not allege that Officer Doe acted with a sufficiently culpable state of mind in delaying intervention in the altercation. To the contrary, Mr. Clark concedes that Doe's delay in breaking up the physical altercation was caused by the need to secure other prisoners in their cells rather than some invidious motive.

As to the second part, Mr. Clark does not specify what Officer Doe falsified in his incident report, nor does he allege how that falsehood injured him. In any event, "the filing of a fraudulent misconduct report and related disciplinary sanctions do not without more violate due process." *Seville v. Martinez*, 130 F. App'x 549, 551 (3d Cir.

7

2005) (per curiam). This is because "[d]ue process is satisfied where an inmate is afforded an opportunity to be heard and to defend against the allegedly false misconduct reports." *Thomas v. McCoy*, 467 F. App'x 94, 97 (3d Cir. 2012) (per curiam); *see also Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002) ("[S]o long as certain procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim."). Mr. Clark acknowledges he had the opportunity.

### 5. Deputy Wardens Miller and McFadden and Mr. Mette

Mr. Clark appears to assert three claims against Deputy Wardens Miller and McFadden. *First*, he complains that they reduced his cellmate's sentence for the altercation. To the extent that he is asserting a due process claim or an equal protection claim based on that decision, it fails for the reasons that the Court has already set forth: he received the process to which he was entitled; and he was differently situated from his cellmate.

*Second*, Mr. Clark seems to complain that their decision (either during the course of his appeal or prior) violated his right to "safety," but he offers no details to support that allegation. It is wholly conclusory.

*Third*, he complains that the outcome of his appeal was that he had to move cellblocks, with adverse impacts on his arraignment and sentencing. Generously, the Court reads that as asserting a claim about access to the courts during his criminal proceedings. "A prisoner making an access-to-the-courts claim is required to show that the denial of access caused actual injury." *Jackson v. Whalen*, 568 F. App'x 85, 87 (3d Cir. 2014) (*per curiam*) (quoting *Lewis v. Casey*, 518 U.S. 343, 350 (1996)). In other

8

words, a prisoner claiming that he was denied access to the courts must allege an injury traceable to the conditions of which he complains. *See Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013) (*per curiam*). An actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). "[T]he underlying cause of action, . . . is an element that must be described in the complaint." *Id*. Mr. Clark does not identify any claim that he "lost" due to his disciplinary sentence being different from the one imposed on the cellmate, or even that he lost at all. The claim is therefore not plausible

Finally, Mr. Clark asserts that Deputy Warden Miller and Mr. Mette "denied [him] the privilege of being intentionally classified as a person of inferiority" and had knowledge of the substantial risk he faced from his cellmate. (ECF No. 9 at 14.) As best the Court can tell, Mr. Clark is attempting to assert a "punishment" claim under the Due Process Clause of the Fourteenth Amendment. As with his other such claims, however, he has failed to allege that anyone acted with a sufficiently culpable state of mind. He also fails to allege an objectively serious deprivation. The Court will dismiss that claim as implausible.

### 6. Director Donate and Warden Russel

As with his prior complaint, Mr. Clark does not allege that Director Donate or Warden Russel was personally involved in the altercation or the disciplinary process that followed. Although knowledge and acquiescence in a subordinate's constitutional violations may also qualify as personal involvement, *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1988), to allege knowledge or

9

acquiescence plausibly, a plaintiff must allege the defendant's (1) contemporaneous knowledge of the offending incident or knowledge of similar incidents in the past, and (2) actions or inactions which communicated approval of the subordinate's behavior. *See C.H. ex rel. Z.H. v. Oliva,* 226 F.3d 198, 202 (3d Cir. 2000). A plaintiff cannot allege plausibly that a supervisory defendant had constructive knowledge of a subordinate's unconstitutional conduct simply because of his role as a supervisor. *See McQueen v. Phila. Hous. Auth.,* Civ. A. No. 02-8941, 2003 WL 22533726, at *3 (E.D. Pa. Sept. 26, 2003). Mr. Clark does not allege that Warden Russel or Director Donate had contemporaneous knowledge of the incident, nor does he allege facts about similar incidents that would convey approval of unconstitutional conduct.

To the extent Mr. Clark is alleging that Warden Russel or Director Donate failed to train any LCJ staff, that claim also is not plausible. Failure to train allegations only amount to deliberate indifference "where the need for more or different training is obvious" and the lack of training can be expected to result in constitutional violations. *Carter v. City of Phila.,* 181 F.3d 339, 357 (3d Cir.1999) (citing *City of Canton v. Harris,* 489 U.S. 378, 388(1989)). While Mr. Clark asserts that Warden Russel and Director Donate are responsible for the training of all staff at LCJ, he fails to describe how their training was lacking or show anything that might amount to deliberate indifference.

Finally, Mr. Clark's allegations that LCJ inmates cannot file grievances over cell assignments also fails to assert a plausible claim. First, claims based on the handling of prison grievances fail because "[p]rison inmates do not have a constitutionally protected right to a grievance process." *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005) (per curiam); *see also Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir.

10

2009) (per curiam). Second, it is well-settled that prisoners have no inherent constitutional right to placement in any particular prison, to any particular security classification, or to any particular housing assignment. *See Wilkinson v. Austin*, 545 U.S. 209, 221–22 (2005).

### 7. Deliberate indifference to medical need

Mr. Clark alleges that someone told him that he did not need medical care because he's "tough," but he does not say who told him that. (ECF No. 9 at 5.) In fact, he says nothing about who from the prison denied him medical care. He cannot assert a broad-based claim without demonstrating that some prison official knew of and disregarded risks to his health and safety. *See Farmer v. Brennan*, 511 U.S. 825, 836–37 (1994). Mr. Clark has not made such an allegation.

### B. Individual Capacity Claims

Claims against municipal and county officials named in their official capacity are indistinguishable from claims against the entity that employs them, here Lehigh County. *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)). To state a claim for municipal liability, a plaintiff must allege that the defendant's policies or customs caused the alleged constitutional violation. *See Monell*, 436 U.S. at 694; *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 583–84 (3d Cir. 2003). The plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the pleading standard. *McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009). Mr. Clark does not allege that he suffered a

constitutional violation due to a policy or custom of Lehigh County, which employed each of the Defendants. (To the extent Mr. Clark intends to proceed against the County on a failure-to-train theory, that claim fails for the reasons the Court has already given.) The Court will therefore dismiss his claims against each Defendant in his official capacity.

### C. Procedural Issues

#### 1. Leave to amend

The Third Circuit has held that district courts should dismiss complaints under the PLRA with leave to amend "unless amendment would be inequitable or futile." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002); *see also Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000). Mr. Clark has already been given an opportunity to amend, and the Court concludes that further amendment of the claims in this case would be futile. *See Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (amendment by pro se litigant would be futile when litigant "already had two chances to tell his story"). Therefore, the Court will dismiss all implausible claims with prejudice.

#### 2. Leave to amend

The only claim that the Court is allowing to proceed is against Officer Tyler. Mr. Clark has not included enough information for the United States Marshals Service to serve Officer Tyler, though. There's no first name, badge number, or other specific identifying information in the AC. Therefore, the Court will permit Mr. Clark to maintain a claim against Warden Russel for the sole purpose of giving the Marshals someone to serve. The Marshals can serve the AC, this Memorandum, and the

accompanying Order on Warden Russel, and Warden Russel can assist Mr. Clark in identifying Officer Tyler for purposes of service by the Marshals. Once the Marshals effect service on Officer Tyler, the Court will dismiss the claims against Warden Russel. *See Davis v. Kelly*, 160 F.3d 917 (2d Cir. 1998); *Wyatt v. Municipality of Commonwealth of Philadelphia*, 718 F. App'x 102, 103-04 (3d Cir. 2017) (*per curiam*).

## IV.   CONCLUSION

The Court will permit Mr. Clark to pursue his claim against Officer Tyler based on Officer Tyler's refusal to honor Mr. Clark's bottom bunk pass. The Court will dismiss all other claims, but it will hold off on dismissing Warden Russel so that he can help identify Officer Tyler to receive service of process. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
**JOSHUA D. WOLSON, J.**

December 2, 2021