IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SHELBY TYRONE CLARK, JR.,** | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 5:21-cv-04096-JDW |
| | : | |
| **LT. BROOKE ALBERT,** et al., | : | |
| Defendants. | : | |

**MEMORANDUM**

The Court must decide whether Plaintiff Shelby Tyrone Clark, a detainee at Lehigh County Jail ("LCJ"), has enough evidence to proceed to trial against Defendant Kyle Russell, Warden of LCJ, for allegedly violating Mr. Clark's Eighth Amendment rights. He doesn't, so the Court will grant summary judgment.

I.  **BACKGROUND**

   A.  Facts

On March 5, 2021, Mr. Clark was transferred to LCJ Cellblock 3B and was assigned to a top bunk despite having a medical pass for a bottom bunk due to his arthritis. Mr. Clark claims that he told the correctional officer on duty, named in the Amended Complaint as "Officer Tyler," about his bottom bunk pass. Allegedly, Officer Tyler told Mr. Clark that he would have to wait one month until his cellmate's release to receive a bottom bunk because his cellmate also had a bottom bunk pass. Mr. Clark claims that this statement was untrue, that despite the availability of grievance forms in his cellblock he

was unable to grieve housing issues, and that he suffered pain when climbing into and out of his bunk as a result. One hour after he arrived in Cellblock 3B, Mr. Clark received a bottom bunk.

**B.     Procedural History**

Mr. Clark filed his original complaint on September 13, 2021. On October 20, 2021, the Court dismissed nearly all of Mr. Clark's claims, but gave him leave to amend. On November 1, 2021, Mr. Clark amended his Complaint, and on December 2, 2021, the Court dismissed nearly all of Mr. Clark's claims but allowed him to pursue Eighth Amendment claims against an Officer Tyler for allegedly assigning Mr. Clark to a top bunk despite his medical pass. Because Mr. Clark did not know Officer Tyler's identity, the Court allowed Mr. Clark to keep Warden Kyle Russell as a Defendant so that there would be someone to serve.

On August 3, 2022, Warden Russell sent a letter to the Court that stated that there was no correctional officer with the surname "Tyler," and only one correctional officer and one nurse with the first name "Tyler", employed at LCJ when the incident occurred. No LCJ employee with the first or last name "Tyler" was in the vicinity of the alleged incident on March 5, 2022.

On August 3, 2022, Mr. Clark filed a "Motion for Injunctive Relief and Damages," which raises issues that post-date the Amended Complaint's surviving claim. Warden Russell filed this Motion for Summary Judgment on August 22, 2022, arguing that the

Prison Litigation Reform Act bars Mr. Clark's claims because he failed to exhaust his administrative remedies, that Mr. Clark had not identified "Officer Tyler" despite the information that the defense provided in discovery, and that Mr. Clark did not adduce evidence sufficient to sustain disputes of material facts. On September 1, 2022, Mr. Clark opposed Warden Russell's Motion. He argued that he had exhausted his administrative remedies because LCJ correctional officers make it impossible to grieve housing assignments, and that he had identified Officer Matechik as the true name of "Officer Tyler." While it is not clear that Mr. Clark's identification of Officer Matechik is sufficient at this late date, it is not a basis for the Court's decision, so the Court will assume it is proper.

On September 15, 2022, Mr. Clark filed another Motion For Injunctive Relief And Damages, a Motion to correct his Motion For Injunctive Relief And Damages, and a Motion for leave to take additional discovery.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) permits a party to seek, and a court to enter, summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he plain language of Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*,

477 U.S. 317, 322 (1986) (quotations omitted). In ruling on a summary judgment motion, a court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quotation omitted). However, "[t]he non-moving party may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists a genuine dispute over a material fact." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citation omitted). The movant is entitled to judgment as a matter of law when the non-moving party fails to make such a showing. *Dodson v. Coatesville Hosp. Corp.*, 773 Fed. Appx. 78, 81 n.6 (3d Cir. 2019) (quotation omitted).

"If a party fails to . . . properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion; [and] grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it[.]" Fed. R. Civ. P. 56(e)(2)-(3). Thus, a moving party is not entitled to summary judgment as a matter of right just because the adverse party does not respond. *See Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990) (quotation omitted). Instead, the court must conduct a full analysis to determine "whether the moving party has shown itself to be entitled to judgment as a matter of law." *Id.*

4

## III.  DISCUSSION

### A.  New Facts

The only claim before the Court is that a correctional officer violated Mr. Clark's Eighth Amendment rights when he assigned Mr. Clark to a top bunk on March 5, 2021, which caused Mr. Clark pain and suffering. However, Mr. Clark's filings, including what he calls a "Motion for Injunctive Relief and Damages" and his Opposition to Defendant's Motion for Summary Judgment, make factual assertions that postdate both the claim and the Amended Complaint. The Court is not a catchall for every grievance Mr. Clark might have, even on the same subject as this case. To the extent Mr. Clark's allegations raise legitimate concerns that the LCJ is subjecting him to unnecessary pain and suffering by housing him in a top bunk, his remedy is first through the prison's grievance system, not here.

### B.  Exhaustion

The PLRA requires an inmate to exhaust all administrative remedies prior to seeking a judicial remedy. *See* 42 U.S.C. § 1997e(a). Exhaustion under the PLRA requires "a prisoner [to] complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal Court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). The relevant procedural rules are those of the facility in which the inmate is detained. *Downey*, 968 F.3d at 305 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007).

The undisputed facts show that Mr. Clark did not comply with the LCJ's grievance procedures. LCJ Policy 3.1.5.J.B.8. advises all inmates that they must exhaust administrative remedies contained in the Policy prior to seeking judicial remedies, and LCJ Policy 3.1.5.J.D.5. states that an inmate must submit a formal grievance form such that "the Grievance Coordinator receives the form no later than 21 calendar days from the event that triggered the grievance." (ECF No. 39-3 at 13-14). Mr. Clark never filed a formal grievance about this incident.

Mr. Clark claims that it isn't possible to grieve housing assignments, therefore he exhausted his administrative remedies by protesting verbally and informally to prison staff. He further claims that he couldn't grieve his assignment because "Officer Tyler" told him he would have to wait one month for a bottom bunk, which somehow precluded him from filing a formal grievance. However, LCJ Policy 3.1.5.J.A.1 lists "Housing Unit Operations" as a grievable issue under. (ECF No. 39-3 at 12.) There were grievance forms available to Mr. Clark at the time of the incident. Mr. Clark makes a bald assertion about a "machination" at LCJ to prevent housing assignment grievances, but he offers no evidence. That is not sufficient to put a material fact into dispute for purposes of summary judgment. Because Mr. Clark did not exhaust his administrative remedies, the PLRA bars his constitutional claims.

### C.     Eighth Amendment

Eighth Amendment claims against prison officials must meet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotations and citations omitted). "Courts have found that it can be an Eighth Amendment violation where an inmate has a serious medical need requiring him to use the bottom bunk, but prison officials are deliberately indifferent to that need." *Saunders v. GEO Grp., Inc.*, Civ. A. No. 19-2322, 2019 WL 5558659, at *4 (E.D. Pa. Oct. 25, 2019) (quote omitted). That standard applies equally to pretrial detainees. *See id.* "A prison official acts with deliberate indifference to a prisoner's medical needs only if he or she 'knows of and disregards an excessive risk to inmate health or safety'". *Wall v. Bushman*, 639 Fed.Appx. 92, 94 (3d Cir. 2015) (quoting *Farmer*, 511 U.S. at 837).

Mr. Clark's claim fails to meet both Eighth Amendment requirements. Mr. Clark received a bottom bunk assignment approximately one hour after he was assigned to a top bunk. Mr. Clark provided no evidence to the contrary. An hour-long erroneous bunk assignment is not, "objectively, sufficiently serious" for purposes of the Eighth Amendment. *Cf. Farmer*, 511 U.S. at 834. Even if such a deprivation were sufficiently serious, Mr. Clark adduced no evidence that the correctional officer in Cellblock 3B was deliberately indifferent to his suffering. To the contrary, unrefuted evidence in the record

shows that on March 3, 2022, Officer Matechik wrote in the "Daily Log" for Cellblock 3B that "Clark, Shelby was originally in [a top bunk] but he is bottom bunk bottom tier, moved to [bottom bunk] . . . to accommodate." (ECF No. 39-3 at 8.) This shows that Officer Matechik was sensitive to Mr. Clark's medical needs and resolved the issue by moving him to an appropriate bunk assignment. Mr. Clark has provided no evidence of deliberate indifference to his medical needs.

### D. Additional Discovery

Mr. Clark has not shown good cause for the Court to amend the scheduling order and reopen discovery because none of the discovery that Mr. Clark seeks would change the outcome.

### IV. CONCLUSION

Mr. Clark failed to provide any evidence that dispute facts in the record that establish that the PLRA bars his claim and that his claim fails on the merits. The Court will therefore grant the Motion for Summary Judgment. In addition, because Mr. Clark cannot prevail on the merits, he has no basis to obtain an injunction, whether preliminary or permanent. An appropriate order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
**JOSHUA D. WOLSON, J.**

September 20, 2022